UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RODNEY DOWNARD, | ) | Case No. 3:08CV2294 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE KATHLEEN O'MALLEY |
| | ) | (Magistrate Judge McHargh) |
| CARL ANDERSON, | ) | |
| Warden, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner Rodney Downard ("Downard") has filed a petition for a writ of habeas corpus through counsel, arising out of his 2001 jury conviction for aggravated murder, in the Wood County (Ohio) Court of Common Pleas. In his petition, Downard raises two grounds for relief:

    1. Trial counsel was ineffective prejudicing Petitioner's rights to due process and a fair trial.

    2. Petitioner's right to a fair trial was violated when he was forced to testify.

(Doc. 1, at § 12.)

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

At 5:02 a.m. on January 12, 2005, appellant called 911 and reported that his wife had been stabbed. Appellant told the dispatcher that the only people in the house other than himself were his wife and their three children-Breynn, 8, Hawke, 6, and Hunter, 4. When the Wood County Sheriff's Deputies arrived several minutes later, appellant let them into the house. He showed them to a bedroom on the first floor where they found appellant's wife, LuAnn Downard, lying on her back in bed with a knife in her chest. Only the handle of the knife protruded from her body. The victim's clothing and bedding were saturated with blood. Appellant told the deputies that he and his wife did not share a bedroom; he had come downstairs from his bedroom to find LuAnn "that way." An EMT pronounced LuAnn dead at the scene.

According to a deputy, appellant smelled strongly of beer. He had what two deputies described as a "fresh scratch" on his face and blood stains on his hands, wrist, watch and pants. Appellant appeared to be "cool and calm." Appellant signed a permission to search form and, at approximately 8:45 a.m., he agreed to go to the sheriff's office to be interviewed.

The interview was not recorded on video or audiotape. Testimony as to what transpired during the interview was provided by John Helm, an investigator with the Wood County Prosecutor's Office, and Wood County Sheriff's Detective Lieutenant Charles Frizzell. While appellant was being interviewed, Detective Sergeant Charles Below called from appellant's home to say deputies had found packaging for a kitchen knife in appellant's bedroom. When confronted with that information, appellant said the packaging was in his room because he had recently taken it away from the children. Detective Below called again to say that between appellant's top and bottom mattresses officers had found a "balled-up" towel with reddish-brown stains, similar stains on the mattresses and two latex gloves. Appellant denied knowing how the items got there. He requested and was permitted a restroom break. After the break, appellant stopped insisting he had no idea what had happened and claimed instead that he simply could not remember. According to one of the detectives, in response to their questions he stated, "Well, if that's what you want me

to say, I'll say that." Appellant then said that he had accidentally stabbed LuAnn when he tripped and fell on top of her while standing by her bed with the knife.  Eventually, appellant admitted that he had intentionally stabbed LuAnn after he stood over her while she slept and considered whether to kill her.  He stated that when he stabbed LuAnn, she sat up and screamed.  Appellant also said she may have scratched him when he pushed her back down.

On February 3, 2005, appellant was indicted on one count of aggravated murder in violation of R.C. 2903.01(A).  Appellant entered a plea of not guilty.  On April 18, 2005, appellant filed a motion to suppress the statements he made when he was interviewed by Helm and Frizzell on the day of the murder, claiming that the statements were not made voluntarily.  Following a hearing, the trial court denied the motion.

The case was tried to a jury and on September 30, 2005, a guilty verdict was returned.  Appellant was sentenced to life imprisonment with parole eligibility after 20 years.

(Doc. 12, RX 11, at 2-4; State v. Downard, No. WD-05-086, 2007 WL 1300541, at *1-*2 (Ohio Ct. App. May 4, 2007).)

On direct appeal, Downard set forth six assignments of error:

1.  The trial court violated defendant-appellant's right against self incrimination by denying defendant-appellant's motion to suppress his pre-trial statements because they were involuntarily made.

2.  The defendant-appellant was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

3.  The trial court committed reversible error when it allowed hearsay evidence to be considered by the jury.

4.  The defendant-appellant was denied due process of the law in that because of the severe acoustical limitations and problems experienced during the course of the trial the defendant-appellant did not receive a fair trial.

3

>    5.  The defendant-appellant was denied due process of the law in that due to acts of prosecutorial misconduct during the course of the trial the defendant-appellant did not receive a fair trial.
>
>    6.  The defendant-appellant's conviction on the charge of aggravated murder was against the manifest weight of the evidence.

(Doc. 12, RX 8.)  The state court of appeals affirmed his conviction.  (Doc. 12, RX 11; State v. Downard, No. WD-05-086, 2007 WL 1300541, at *10 (Ohio Ct. App. May 4, 2007).)

On June 15, 2007, Downard filed an appeal with the Supreme Court of Ohio, setting forth two propositions of law:

>    1.  The Sixth and Fourteenth Amendments of the Constitution of the United States and Section 10, Article I, of the Constitution of the State of Ohio collectively guarantee that persons accused of crimes shall be afforded the right to due process, including the right to be represented by competent legal counsel (effective assistance of counsel).
>
>    2.  The Fifth and Fourteenth Amendments of the Constitution of the United States and Section 10, Article I, of the Constitution of the State of Ohio collectively guarantee that persons accused of crimes shall be afforded the right to due process, including the right against self-incrimination.

(Doc. 12, RX 12.)

On Oct. 3, 2007, the Supreme Court of Ohio denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question.  (Doc. 12, RX 14; State v. Downard, 115 Ohio St.3d 1422, 874 N.E.2d 539 (2007).)

II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The first ground of the petition is that Downard was denied effective assistance of trial counsel. In support of his claim, Downard states:

> Trial counsel made prejudicial and disparaging remark during opening and closing arguments that poisoned the jury; failed to object to numerous leading and/or hearsay questions by the prosecutor; failed to move for a mistrial; failing to call the children to testify or be interviewed; failing to reasonably cross scientific expert witnesses; and succumbing to the pressure of the trial court.

(Doc. 1, at § 12(a).)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel." Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). The Sixth Circuit discussed the standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant. Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." To establish prejudice, the defendant "must show that there is a reasonable probability that, but

>for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (internal citations omitted). See generally Bobby v. Van Hook, 130 S.Ct. 13, 17 (Nov. 9, 2009) ("Constitution imposes one general requirement:  that counsel make objectively reasonable choices"); Strickland v. Washington, 466 U.S. 668, 689 (1984) (two-part test).

In the habeas context, this court considers petitioner's claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable."  Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).

The state court of appeals rejected Downard's claim of ineffective assistance as follows:

>To prevail on a claim of ineffective assistance of counsel, appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  This standard requires appellant to satisfy a two-part test.  First, appellant must show counsel's representation fell below an objective standard of reasonableness.  Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984), 466 U.S. 668.  This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent.  State v. Hamblin (1988), 37 Ohio St.3d 153.
>
>In support of this claim, appellant asserts trial counsel demonstrated a total lack of commitment to his defense by making disparaging comments about him during his opening statement and closing argument.  During his opening statement, counsel referred to appellant as a "forlorn character" but then immediately said, "I want to strike that.  But he is a forlorn person." During closing argument,

7

>counsel told the jury that if they viewed appellant's "clumsy performance" on the witness stand as indicative of his guilt they would be wrong. In making that remark, counsel appeared to be attempting to minimize appellant's unemotional demeanor when he was questioned about his wife's murder.
>
>Appellant also claims counsel contradicted his testimony when he indicated appellant knew his wife was "sleeping around" with several other men. This comment, however, did not directly contradict appellant's testimony, as appellant made several statements indicating he was aware of at least one of the relationships his wife had with other men.
>
>Appellant's remaining claims are not supported by any argument or authority. As he did under his third assignment of error, appellant merely lists pages of transcript after each assertion. Appellant claims counsel should have objected to numerous "leading and/or hearsay questions" throughout the trial. These claims were addressed under appellant's third assignment of error. Appellant also argues that counsel should have moved for a mistrial when the prosecutor "attempted to prohibit the introduction of newly identified exculpatory evidence." The merits of this argument were addressed under appellant's fifth assignment of error. Appellant further argues that counsel was ineffective because he either failed to cross-examine, or examined very briefly, several of the scientific experts presented by the prosecution. The record reveals, however, that counsel cross-examined every witness presented by the prosecution with the exception of the individual who was called simply to authenticate LuAnn Downard's death certificate. As to the length of counsel's various cross-examinations, such a matter is within the realm of trial strategy and not for this court to second-guess. See Strickland, supra. Finally, appellant argues that trial counsel "succumbed to the pressure of the trial court that the trial needed to be completed before the end of the week." This argument is without merit.
>
>Upon review of the foregoing, we cannot say that appellant's trial counsel was ineffective and, accordingly, his second assignment of error is not well-taken.

(Doc. 12, RX 11, at 18-20; Downard, 2007 WL 1300541, at *9-*10.)

Earlier in its opinion, the court found that testimony which Downard sought to characterize as hearsay testimony was not in fact hearsay. (RX 11, at 9-11; Downard, 2007 WL 1300541, at *4-*5.) Thus, there could be no error of counsel in failing to object.

As to the allegations of prosecutorial misconduct, the court found that the prosecutor's objection to testimony regarding hair samples (as unauthenticated) did not deprive Downard of a fair trial. (Subsequently, the forensic scientist's report, as well as the hair sample, was authenticated, the state withdrew its objection, and the items were admitted into evidence.) (RX 11, at 12-14; Downard, 2007 WL 1300541, at *6-*7.)

The respondent argues that Downard "has completely failed to demonstrate that his counsel was deficient . . . or that he was prejudiced under [Strickland]." (Doc. 12, at 29.) Downard contends that the state court did not thoroughly examine his arguments on appeal. (Doc. 8, at 13.) On the contrary, the court of appeals stated: "This court has reviewed the entire transcript of proceedings in the trial court." (RX 11, at 12; Downard, 2007 WL 1300541, at *6.) For example, the court asserted that it had "reviewed each of the segments of trial transcript cited by appellant as constituting hearsay." (RX 11, at 10; Downard, 2007 WL 1300541, at *5.) As outlined above, the state court discussed in some detail Downard's allegations that counsel was ineffective. (Doc. 12, RX 11, at 18-20; Downard, 2007 WL 1300541, at *9-*10.)

9

However, this court is specifically tasked to determine whether the state-court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Williams, 529 U.S. at 412-13; Lorraine, 291 F.3d at 421-422.

Here, the state court correctly identified the proper Constitutional standard for evaluating a Sixth Amendment claim alleging ineffective assistance of counsel. (Doc. 12, RX 11, at 18; Downard, 2007 WL 1300541, at *9, citing Strickland v. Washington.)  Thus, this court may grant the writ if the state court unreasonably applied Strickland to Downard's case. A state court decision is not unreasonable simply because this court considers the decision to be erroneous or incorrect; rather, this court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

The state court's determination that counsel was not constitutionally ineffective was not an unreasonable finding. More importantly, Downard has failed to establish prejudice from any alleged errors of counsel. As the court of appeals summarized the evidence[1], it appears that the evidence against Downard was overwhelming. See doc. 12, RX 11, at 16-17; Downard, 2007 WL 1300541, at *7-*8; see also doc. 12, RX 9, at 4-8, 26-29 (state's summary of evidence presented at trial).

---

[1] The state court was addressing Downard's "sufficiency of the evidence" claim, which is not before this habeas court.

Downard has failed to demonstrate that there was a reasonable probability that, but for counsel's alleged errors, the result of his trial would have been different.

Reviewing the state court's decision in light of the arguments presented by the parties, this court cannot find that the state court's ruling that Downard's trial counsel's performance was not constitutionally ineffective is an objectively unreasonable application of federal law. The petition should not be granted on the basis of the first ground.

## IV. FIFTH AMENDMENT VIOLATION

The second ground of the petition is: "Petitioner's right to a fair trial was violated when he was forced to testify." In support of his claim, Downard states:

> Petitioner was forced to testify in order to rebut detective's testimony as to Petitioner's alleged unrecorded, unwritten confession which opened the door coercively to force Petitioner into self-incrimination violating his due process and equal protection rights.

(Doc. 1, at § 12(a).)

Downard's argument on appeal focused primarily on the denial of his motion to suppress, but also argued: "The denial of [Downard's] motion to suppress his pre-trial statements permitted the introduction of his alleged statements with no opportunity for rebuttal other than cross-examination of the investigators and/or his own testimony." (Doc. 12, RX 8, at 3.) He argued that his pre-trial statements were made involuntarily and should not have been admitted into evidence. Id. at 3-10.

At the suppression hearing, the trial court found that Downard had waived his right against self-incrimination, that the interview was not coercive, and that his statements were made voluntarily. (Doc. 12, RX 11, at 7; Downard, 2007 WL 1300541, at *3.) The state court of appeals pointed out that the police read Downard his Miranda rights, and that Downard acknowledged he understood and signed the form before the interview began. (Doc. 12, RX 11, at 7-8; Downard, 2007 WL 1300541, at *3.) The interview lasted about three hours, with one fifteen minute break. (Doc. 12, RX 5, at 2.) Downard confirms that he did receive Miranda warnings, and did sign an acknowledgment and waiver. (Doc. 8, at 5.)

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." Withrow v. Williams, 507 U.S. 680, 688 (1993) (quoting U.S. Const. amend. V.) The Supreme Court has held that the Fifth Amendment's Self-Incrimination Clause is incorporated in the Due Process Clause of the Fourteenth Amendment, and thus applies to the States. Dickerson v. United States, 530 U.S. 428, 434 (2000) (citing Malloy v. Hogan, 378 U.S. 1, 6-11 (1964)); Withrow, 507 U.S. at 688-689.

To safeguard the privilege against self-incrimination, the Supreme Court in Miranda v. Arizona held that "certain warnings must be given before a suspect's statement made during custodial interrogation could be admitted in evidence." Dickerson, 530 U.S. at 431-432 (citing Miranda v. Arizona, 384 U.S. 436 (1966)). Here, Downard did receive Miranda warnings, and signed an acknowledgment and waiver. (Doc. 8, at 5.)

12

A confession must be voluntary to be admitted into evidence. Dickerson, 530 U.S. at 433. The Supreme Court developed a due process "voluntariness" test, which examines whether a suspect's will was overborne by the circumstances surrounding the confession. The due process test takes into consideration the totality of the circumstances, the characteristics of the accused, and the details of the interrogation. Id. at 434; Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). The ultimate issue of "voluntariness" is a legal question requiring independent federal determination. Arizona v. Fulminante, 499 U.S. 279, 287 (1991).

The Supreme Court has stated that "the sole concern" of the Fifth Amendment is "governmental coercion." Colorado v. Connelly, 479 U.S. 157, 170 (1986); Clark v. Mitchell, 425 F.3d 270, 283 (6th Cir. 2005). The Miranda warnings are intended to protect defendants "against government coercion leading them to surrender rights protected by the Fifth Amendment." Connelly, 479 U.S. at 170.

The Court stated that the voluntariness of a waiver "has always depended on the absence of police overreaching." Id. Any waiver must be voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). It is petitioner's burden to establish that, under the totality of the circumstances, his waiver was not knowingly and intelligently made. Garner v. Mitchell, 557 F.3d 257, 260-261 (6th Cir.), cert. denied, 130 S.Ct. 125 (2009).

In support of his habeas claims, Downard asserts that he "was forced to testify [at trial] late in the afternoon on September 29, 2005." (Doc. 8, at 6.) He

argues that any pre-trial statements allegedly made were made involuntarily, and further:

> Because the admissibility of the alleged statements were critical as to the ultimate determination regarding the guilt or innocence of [Downard] at trial, the absence of any extrinsic form of recording regarding his pre-trial statements created a situation where he was required to testify at trial as the only available means for him to rebut the testimony of the investigating officers.

(Doc. 8, at 14.) Downard does not provide any support for his assertion that his pre-trial statement was involuntarily made. See generally doc. 8, at 14-17. Instead, he stresses that the statement was not recorded. Id. at 15-16.

The court of appeals reviewed the testimony of the suppression hearing concerning the circumstances of Downard's interview. (Doc. 12, RX 11, at 5-7; Downard, 2007 WL 1300541, at *2-*3.) The court agreed with the trial court's finding that, based on the totality of the circumstances, the interview was not coercive and Downard's statements were made voluntarily. (RX 11, at 9; Downard, 2007 WL 1300541, at *3-*4.) The court ruled as follows:

> Appellant suggests that the failure to either record the interview or obtain a signed written statement from him is an example of "coercive police tactics." However, appellant fails to explain or even suggest exactly how the officers "coerced" him into making any of the statements which he now describes as involuntary. Appellant suggests he was denied food from the time he arrived at the sheriff's office at 9:15 a.m. through the end of the interview at approximately 4:00 p.m. Testimony contradicts this claim, however, as several officers stated appellant was not interested in food when they asked him if he was hungry. Appellant would have us believe that not immediately providing him with a meal and failing to record the interview renders involuntary any statements he made during that interview. We disagree.

14

Most significant, of course, is the written waiver appellant signed before any of the questioning began.  The trial court concluded that appellant validly waived his rights.  The signed waiver form was admitted into evidence at the suppression hearing without objection.

We further disagree with appellant that his statements were involuntary.  For a defendant's inculpatory statements to be admissible at trial, it must appear that the defendant gave the statements voluntarily.  See State v. Chase (1978), 55 Ohio St.2d 237, 246.  "Evidence of police coercion or overreaching is necessary for a finding of involuntariness * * *."  State v. Eley (1996), 77 Ohio St.3d 174, 178.  See, also, Colorado v. Connelly (1986), 479 U.S. 157, 164; State v. Hill (1992), 64 Ohio St.3d 313, 318.  Furthermore, in determining the voluntariness of an accused's confession, the court must employ the "totality of the circumstances" test.  See State v. Bays (1999), 87 Ohio St.3d 15, 22; Eley, 77 Ohio St.3d at 178; State v. Clark (1988), 38 Ohio St.3d 252, 261.  Under the "totality of the circumstances" test, the reviewing court should consider: (1) the age, mentality, and prior criminal experience of the individual; (2) the length, intensity, and frequency of the interrogation; (3) the existence of physical deprivation or mistreatment; and (4) the existence of threat or inducement.  See State v. Lynch (2003), 98 Ohio St.3d 514, 522, ¶ 54; Bays, supra; State v. Edwards (1976), 49 Ohio St.2d 31, 40.

In the case at bar, the totality of the circumstances demonstrates that appellant voluntarily gave his statements to the law enforcement officers.  The record contains: (1) no evidence of coercion or overreaching; (2) no evidence of physical deprivation or mistreatment; and (3) no evidence of threat or inducement.

Moreover, we disagree with appellant that his confession must be found to be involuntary because the detectives did not record it or because appellant did not write his own statement.  Although we note that it may be the better practice for law enforcement officers to videotape a defendant's confession, the constitution does not require it.  See, generally, State v. Wiles (1991), 59 Ohio St.3d 71, 83-84; State v. Cedeno (Oct. 23, 1998), Hamilton App. No. C-970465; State v. Hodges (1995), 107 Ohio App.3d 578, 588.

Based on the foregoing, we find that the trial court did not err by overruling appellant's motion to suppress the statements that he gave to the detectives.  Accordingly, appellant's first assignment of error is not well-taken.

15

(RX 11, at 7-9; Downard, 2007 WL 1300541, at *3-*4.)

This court has independently reviewed the rulings of the state courts, along with the arguments of the parties. Downard does not provide any evidence of any police overreaching, intimidation, coercion or deception. Downard does not provide any support for a finding that any pre-trial statement by him was involuntarily made. See generally doc. 8, at 14-17. The state courts' rulings on the voluntary nature of Downard's waiver, and the voluntary nature of his subsequent statements during the police interview, do not demonstrate an objectively unreasonable application of federal law.

Downard's specific claim in support of habeas relief is that "he was forced to testify." Downard does not provide any indication that the court, or his counsel, or anyone else, "forced" him to testify. See generally doc. 1 and doc. 8. Rather, he contends that the fact of his alleged pre-trial confession compelled him to testify to counter that confession.

The defendant's testimony that he did not confess is certainly one way to counter an alleged confession. However, it is not the only strategy which could have been followed. Counsel could have attacked the circumstances of the interview in any number of ways, for example, impeached the testimony of the police, or attacked the lack of a transcript, a recording, or a written confession. There are positives and negatives to any of these approaches, of course. However, the choice to have defendant testify is merely that: one choice among several. See generally Rock v. Arkansas, 483 U.S. 44 (1987) (right to testify in own behalf). It cannot be

16

said that Downard was coerced into surrendering his Fifth Amendment right against self-incrimination. See, e.g., Williams v. Florida, 399 U.S. 78, 83-84 (1970) (dilemma of choice between complete silence and presenting defense is not invasion of Fifth Amendment privilege against compelled self-incrimination); United States v. Abcasis, 785 F.Supp. 1113, 1117 (E.D. N.Y. 1992) (nothing "compelled" about assertion of alibi defense because defendant under no compulsion to pursue it). The "compulsion" produced by a strong evidentiary case against a defendant "is not the kind of compulsion protected against by the Fifth Amendment." United States v. Carleo, 576 F.2d 846, 850 (10th Cir.), cert. denied, 439 U.S. 850 (1978).

More importantly, Downard has failed to establish that the state courts' decisions on this issue are contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. The petition should not be granted on the basis of the second ground.

## V. SUMMARY

The petition for a writ of habeas corpus should be denied. Downard has failed to establish that the state courts' decisions are contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED.


Dated:  June 14, 2010                         /s/ Kenneth S. McHargh
                                                  Kenneth S. McHargh
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).